```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------X
                                                                       :
ADRIAN THOMASON,                                                       :
                                                                       :
                              Plaintiff,                               :
                                                                       :      20 Civ. 8982 (JPC)
              -v-                                                      :
                                                                       :      OPINION AND
                                                                       :         ORDER
TARGET CORPORATION,                                                    :
                                                                       :
                              Defendant.                               :
                                                                       :
-----------------------------------------------------------------------X
```

JOHN P. CRONAN, United States District Judge:

Adrian Thomason brings this suit against Target Corporation ("Target") after she slipped and fell on some green liquid at a Target store in the Bronx. Discovery has revealed certain dispositive undisputed material facts. Thomason does not know how the liquid got there. Nor does she know how long it had been there before she fell. And nothing suggests that the liquid had been on the floor long enough for Target's employees to discover it and clean it up. With Thomason unable to point to evidence of how long the liquid was on the floor or of any notice Target had of a hazard, there is no triable issue of fact regarding whether Target had notice that a danger existed. Target is therefore entitled to summary judgment.

## I. Background

**A.  Facts[1]**

**1.  Alleged Incident**

On the evening of October 10, 2017, Thomason drove to a Target store in the Bronx with her boyfriend, Darryl Carrington. Dkt. 22, Exh. B ("Thomason Dep. Tr.") at 40:3-8, 40:20-22; Dkt. 22, Exh. C ("Carrington Dep. Tr.") at 11:5-8; Pl. 56.1 Stmt. ¶¶ 1, 13-14; see Dkt. 22, Exh. A ("Rodriguez Dep. Tr.") at 9:9-11. At around 5:30 p.m., Thomason headed into the store while Carrington waited in the car. Thomason Dep. Tr. at 40:25-41:2; Carrington Dep. Tr. at 17:7-10; Pl. 56.1 Stmt. ¶¶ 13-14. After entering the store, Thomason grabbed a shopping cart and went straight to the refrigerated section in the back of the store. Thomason Dep. Tr. at 41:7-9, 21-23; Pl. 56.1 Stmt. ¶¶ 15-16. She grabbed a creamer from the refrigerator and headed over to the dog food area, which was also in the back of the store. Thomason Dep. Tr. at 44:12-45:6; Pl. 56.1 Stmt. ¶ 17.[2] Thomason noticed nothing on the floor when she went over to the dog food section. Thomason Dep. Tr. at 45:14-16; Pl. 56.1 Stmt. ¶ 18.

---

[1] These facts are mainly drawn from Target's statement of material facts under Local Civil Rule 56.1, Dkt. 26 ("Deft. 56.1 Stmt."), Thomason's counter-statement under Rule 56.1, Dkt. 28 ("Pl. 56.1 Stmt."), Target's reply statement under Rule 56.1, Dkt. 30 ("Reply 56.1 Stmt."), and the exhibits filed by Target. Unless otherwise noted, for facts first raised in Target's statement of material facts, the Court cites only to Thomason's counter-Rule 56.1 statement when the parties do not dispute the fact, Thomason has not offered admissible evidence to refute that fact, or Thomason simply seeks to add her own "spin" on the fact or otherwise dispute the inferences from the stated fact. In that same vein, unless otherwise noted, for facts first raised in Thomason's counter-statement of material facts, the Court cites only to Target's reply-Rule 56.1 statement when the parties do not dispute the fact, Target has not offered admissible evidence to refute that fact, or Target simply seeks to add its own "spin" on the fact or otherwise dispute the inferences from the stated fact.

[2] Although the parties both contend that Thomason grabbed two creamers, see Pl. 56.1 Stmt. ¶ 17; Deft. 56.1 Stmt. ¶ 17, Thomason testified at her deposition that she grabbed only one creamer, see Thomason Dep. Tr. at 44:15-17.

After walking "at least" two aisles from where she grabbed the creamer, Thomason stepped on some "nice size[d]" "greenish liquid" that caused her to slip and fall. Thomason Dep. Tr. at 46:17-18, 50:20-24, 51:12-15; Pl. 56.1 Stmt. ¶¶ 20-21, 23, 25. Although Thomason's shopping cart went through the liquid before she stepped in it, she did not see the liquid until after she fell. Thomason Dep. Tr. at 51:4-52:5; Pl. 56.1 Stmt. ¶¶ 22-23. Nor could she tell the liquid's consistency, including whether it more closely resembled "green Gatorade" or "green Palmolive soap." Thomason Dep. Tr. at 47:21-22, 60:7-13; Pl. 56.1 Stmt. ¶¶ 21, 31-32. And she did not know how long the liquid was on the floor or how it got there. Thomason Dep. Tr. at 60:18-61:3; Pl. 56.1 Stmt. ¶ 33.

While Thomason lay on the floor, Target employees came to help her. Thomason Dep. Tr. at 53:2-5, 54:16-24; Carrington Dep. Tr. at 22:14-20; Pl. 56.1 Stmt. ¶¶ 34-35. When they got to her, she had the employees call Carrington—who was still waiting in the car—to tell him that she fell. Carrington Dep. Tr. at 18:9-14; Thomason Dep. Tr. at 58:23-24, 59:2-4; Pl. 56.1 Stmt. ¶ 42. When Carrington arrived, Thomason was still lying on the floor. Carrington Dep. Tr. at 21:19-21.

Target employees then helped Thomason off the floor and grabbed a chaise for her to sit on. Thomason Dep. Tr. at 54:6-15; Carrington Dep. Tr. at 24:12-21; Pl. 56.1 Stmt. ¶ 36. When Target employees asked Thomason whether she wanted to fill out an incident report, she told them that she did not want to "at this time." Thomason Dep. Tr. at 57:8-15; Pl. 56.1 Stmt. ¶ 38. It is unclear what Target did in response. Typically, when a customer does not want to fill out an incident report, a Target employee will "fill out a John Doe guest incident report." Rodriguez Dep. Tr. at 31:4-18; Pl. 56.1 Stmt. ¶ 39. But Target claims that it does not have a guest incident report for this incident. Deft. 56.1 Stmt. ¶ 40; *see* Dkt. 22, Exh. D (Target's Response to Thomason's Discovery Production Demands) ¶ 1(E).

3

It is also unclear what happened to the liquid after Thomason fell. Thomason testified at her deposition that a Target employee had wiped up the liquid by the time she had been helped off the floor. Thomason Dep. Tr. at 56:5-8; Pl. 56.1 Stmt. ¶ 37. She also recalled that when Carrington arrived in the store, the green liquid was no longer on the floor. Thomason Dep. Tr. at 59:16-18; Pl. 56.1 Stmt. ¶ 43.

Yet Carrington testified at his deposition that he saw "a nice size[d]" "dark green" liquid on the floor that "could have been guacamole." Carrington Dep. Tr. at 25:24-25, 35:13-19, Pl. 56.1 Stmt. ¶¶ 45, 49, 54. Carrington recalled that the green liquid looked like it "spilled out of a jar" and its consistency was "a little thick," although he did not remember seeing anything broken in the area, including a broken jar. Carrington Dep. Tr. at 26:3-12, 27:6-11; Pl. 56.1 Stmt. ¶¶ 50-52. But Carrington could not recall whether the liquid looked "disrupted . . . or [if] it look[ed] like [Thomason] had gone through it." Carrington Dep. Tr. at 25:21-23; Pl. 56.1 Stmt. ¶ 48.

While Thomason sat in the chaise, Target employees offered her medical assistance, which she declined. Thomason Dep. Tr. at 58:5-9; Pl. 56.1 Stmt. ¶ 41. After sitting in the chaise for a few minutes, Thomason walked with Carrington to their car and headed home. Thomason Dep. Tr. at 58:10-15; Carrington Dep. Tr. at 28:24-25, 29:17-18. The next morning, Thomason went to the emergency room with Carrington. Carrington Dep. Tr. at 30:18-19; Thomason Dep. Tr. at 66:6-9, 66:21-25, 68:2-3. Doctors diagnosed Thomason with a broken left ankle from the incident, which she treated with physical therapy. Thomason Dep. Tr. at 66:3-25, 74:12, 83:2-11, 109:15-17; Reply 56.1 Stmt. ¶ 10.

### 2. Target's Actions Before the Incident

The parties dispute the evidence surrounding Target's actions before Thomason slipped on the green liquid. Target has offered no definitive evidence of the times when its employees conducted inspections on the day of the incident. *See* Pl. 56.1 Stmt. ¶ 3. Instead, Target's witness

testified that the store's Executive Team Leaders—the equivalent of assistant managers—typically conduct a complete inspection of the store three times every day: at 7:00 a.m., 1:00 p.m., and 5:00 p.m. Rodriguez Dep. Tr. at 43:13-45:2; Deft. 56.1 Stmt. ¶ 3.

But no evidence conclusively details when the inspections took place on the day that Thomason fell. Target's only deponent, Doris Rodriguez—the Executive Team Leader in the store's Food Department that day—did not remember whether she worked on the date of the alleged incident. Rodriguez Dep. Tr. at 18:19-22, 31:19-20, 31:24-32:25; Pl. 56.1 Stmt. ¶ 3; Reply 56.1 Stmt. ¶1. Nor has Target has provided inspection logs for that date. *See* Rodriguez Dep. Tr. at 48:14-16; Reply 56.1 Stmt. ¶ 3. But based on Target's routine practice of inspecting its floors, Rodriguez claimed that a team member inspected the area where Thomason slipped "at least after 5 pm." Rodriguez Dep. Tr. at p.69; Reply 56.1 Stmt. ¶ 5.

Neither Thomason nor Carrington know how long the green liquid was on the floor before her fall or when Target last inspected the area. *See* Thomason Dep. Tr. at 60:18-22; Carrington Dep. Tr. at 28:6-8; Pl. 56.1 Stmt. ¶¶ 33, 46. Nor has Thomason otherwise provided any evidence suggesting how long the liquid was on the floor before she fell.

**B.     Procedural History**

In September 2020, Thomason sued Target and Target Enterprises in New York state court, alleging negligence under New York law for failing to clean the green liquid that caused her to fall. Dkt. 1, Exh. A ("Complaint"). On October 27, 2020, Target and Target Enterprises removed the case to this Court. Dkt. 1. On October 29, 2020, the case was reassigned to the undersigned. On December 9, 2020, Thomason voluntarily dismissed Target Enterprises from the case, which the Court approved the next day. Dkts. 9, 11.

Target now moves for summary judgment on Thomason's cause of action. Dkts. 24, 25 ("Motion"), 29 ("Reply"). Thomason opposes the motion. Dkt. 27 ("Opposition").

## II. Legal Standards

Summary judgment is appropriate if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). While courts "are required to resolve all ambiguities and draw all permissible factual inferences in favor of [the non-moving party], conclusory statements, conjecture, or speculation by the party resisting the motion will not defeat summary judgment." *Flores v. United States*, 885 F.3d 119, 122 (2d Cir. 2018) (quotations omitted). "Rule 56(c) of the Federal Rules of Civil Procedure mandates the entry of summary judgment against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *El-Nahal v. Yassky*, 835 F.3d 248, 252 (2d Cir. 2016) (quotations omitted).

## III. Discussion

The parties agree that New York law governs Thomason's substantive claims. Motion at 2; Opposition at 6; *see Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938). At trial, "[t]o establish a prima facie case of negligence under New York law, 'a plaintiff must demonstrate (1) a duty owed by the defendant to the plaintiff, (2) a breach thereof, and (3) injury proximately resulting therefrom.'" *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 286 (2d Cir. 2006) (quoting *Solomon ex rel. Solomon v. City of New York*, 489 N.E.2d 1294, 1294 (N.Y. 1985)). In slip-and-fall cases, a plaintiff must first show "the existence of a dangerous or defective condition." *Winder v. Exec. Cleaning Servs., LLC*, 936 N.Y.S.2d 687, 688 (App. Div. 2012). The plaintiff must then show that the defendant (1) "created the condition which caused the accident," (2) "had actual . . . notice of

the condition," or (3) had "constructive notice of the condition." *Kraemer v. K-Mart Corp.*, 641 N.Y.S.2d 130, 131 (App. Div. 1996).

Here, Thomason only claims that Target had constructive notice of a dangerous condition—the green liquid on the floor. Opposition at 7-11. A plaintiff may establish constructive notice in two ways. First, a plaintiff may show that the defect was "visible and apparent and . . . exist[ed] for a sufficient length of time prior to the accident to permit defendant's employees to discover and remedy it." *Taylor v. United States*, 121 F.3d 86, 90 (2d Cir. 1997) (quoting *Gordon v. Am. Museum of Nat'l Hist.*, 492 N.E.2d 774, 775 (N.Y. 1986)). Second, the plaintiff may show that the "landowner ha[d] actual knowledge of a recurring dangerous condition," which gives the landowner "'constructive notice of each specific reoccurrence of the condition.'" *Gonzalez v. Wal-Mart Stores, Inc.*, 299 F. Supp. 2d 188, 193 (S.D.N.Y. 2004) (quoting *Garcia v. U-Haul Co.*, 755 N.Y.S.2d 900, 900 (App. Div. 2003)).

Whether Target prevails on its motion turns on the summary judgment standard in federal court. Although a state court and a federal court sitting in diversity apply the same substantive law, they at times must rule on dispositive motions differently. That is because in *Erie* the Supreme Court recognized a key difference between cases brought in federal versus state court: "federal courts sitting in diversity apply state substantive law and federal procedural law." *Gasperini v. Ctr. for Humans., Inc.*, 518 U.S. 415, 427 (1996); *see Erie*, 304 U.S. at 78. That means that when state and federal procedural laws differ, there may be different outcomes as to whether otherwise identical claims proceed to trial, depending on whether the claims are being considered in a state court or a federal court.

Indeed, the differing burdens for motions for summary judgment often yield different outcomes for slip-and-fall cases under New York law that depend on the court that decides the

7

motion. In New York state court, "[a] defendant who moves for summary judgment in a trip-and-fall case has the initial burden of making a prima facie showing that it neither created the alleged hazardous condition, nor had actual or constructive notice of its existence for a length of time sufficient to discover and remedy it." *Levine v. Amverserve Ass'n, Inc.*, 938 N.Y.S.2d 593, 594 (App. Div. 2012) (quotations omitted). But in federal court the burden shifts to the plaintiff. "[U]nder New York law, [the plaintiff] would bear the burden at trial of showing that Target had actual or constructive notice of the condition that caused her fall." *Painchault v. Target Corp.*, No. 09 Civ. 1831 (NGG), 2011 WL 4344150, at *3 (E.D.N.Y. Sept. 14, 2011); *accord Tenay v. Culinary Tchrs. Ass'n of Hyde Park*, 281 F. App'x 11, 13 (2d Cir. 2008) ("[U]nder New York law, [the plaintiff] would bear the burden of proof on the elements of his premises liability claim."). Thus, when a defendant moves for summary judgment in federal court, the "plaintiff must demonstrate the existence of a dangerous or defective condition and must show . . . that the defendant [had] . . . constructive knowledge of the condition." *Taylor v. Manheim Remarketing, Inc.*, 752 F. App'x 94, 95 (2d Cir. 2019) (quotations omitted).

In applying these principles, federal "[c]ourts typically grant summary judgment for the defendant where there is evidence that a hazard existed, but no evidence as to how it was created or who was responsible for it." *Paredes v. Target Corp.*, No. 16 Civ. 5603 (PKC), 2019 WL 955073, at *2 (E.D.N.Y. Feb. 27, 2019) (quotations omitted). Or put differently, "the mere existence of a foreign substance on the floor, without more, is insufficient to create a triable issue of fact in a negligence cause of action." *Leandro v. Wal-Mart Supercenter Store #2104*, No. 19 Civ. 2108 (JCM), 2021 WL 2742622, at *9 (S.D.N.Y. June 30, 2021) (quotations and alterations omitted).

Courts in this Circuit therefore routinely grant summary judgment in favor of defendants when presented with facts much like those here: a plaintiff slipped on something on the floor, the plaintiff pointed to insufficient evidence of how long the substance had been on the floor, and there was no definitive proof of the last time the defendant inspected the floor.  Here is a sample.  A court granted summary judgment when a plaintiff slipped on "dark yellow" apple slices on the floor at a Target store, yet lacked any evidence of the last time the area was inspected by the store.  *Lacey v. Target Corp.*, No. 13 Civ. 4098 (RML), 2015 WL 2254968, at *3 (E.D.N.Y. May 13, 2015).  Same too when a plaintiff slipped on a "wet, slimy, or gooey" egg-like substance and the plaintiff argued that the defendant "offer[ed] no proof of the last time the area was inspected or cleaned."  *Decker v. Middletown Walmart Supercenter Store*, No. 15 Civ. 2886 (JCM), 2017 WL 568761, at *7-9 (S.D.N.Y. Feb. 10, 2017) (quotations omitted).  And when neither the plaintiff nor Target "knew the source of the spill" nor the last time an employee had been in the area, a court granted summary judgment because "there [wa]s no evidence that [the spill] was present for any significant amount of time before [the plaintiff] slipped."  *Painchault*, 2011 WL 4344150, at *3-4.

These cases suggest the outcome here.  Neither Thomason's nor Carrington's testimony described "the substance in such a way that a fact-finder could infer it had been on the ground for a sufficient period of time to constitute constructive notice."  *Decker*, 2017 WL 568761, at *9.  Instead, they only describe the color and possible type of liquid—a green liquid that "could have been guacamole," Carrington Dep. Tr. at 35:13-19; Thomason Dep. Tr. at 47:17-22; Pl. 56.1 Stmt. ¶¶ 21, 54—without "provid[ing] . . . guidance regarding its duration on the floor," *Gisser v. Wal-Mart Stores E., LP*, No. 17 Civ. 5293 (JCM), 2018 WL 6493101, at *5 (S.D.N.Y. Dec. 7, 2018).  Nor has Thomason offered any other evidence on how long the liquid had been on the floor: neither

9

Thomason nor Carrington knew this information.  Thomason Dep. Tr. at 60:18-22; Carrington Dep. Tr. at 28:6-8; Pl. 56.1 Stmt. ¶¶ 33, 46; *see Gisser*, 2018 WL 6493101, at *5 (granting summary judgment when the "Plaintiff offer[ed] no evidence regarding how long the solution had been on the floor prior to the Accident").

And even though it need not do so, Target has provided evidence that it regularly inspects its stores, including that an inspection would have typically happened only thirty minutes before Thomason's fall.  Thomason, in contrast, "has not pointed to any evidence that [Target] failed to inspect or clean the premises, but instead incorrectly places the burden on [Target] to produce affirmative evidence of its inspection and cleaning records."  *Decker*, 2017 WL 568761, at *9; *accord Castellanos v. Target Dep't Stores, Inc.*, No. 12 Civ. 2775 (GWG), 2013 WL 4017166, at *7 (S.D.N.Y. Aug. 7, 2013) ("Target's failure to present detailed evidence concerning its inspections of the premises does not preclude summary judgment, as the initial burden rests with the plaintiff to raise a triable question of fact that the defendant created or had notice of the dangerous condition.").  Thomason therefore has not carried her burden to establish that Target had constructive notice of the hazardous condition—"there is no evidence that [the green liquid] was present for any significant amount of time before [Thomason] slipped." *Painchault*, 2011 WL 4344150, at *4.

Thomason resists this conclusion by citing New York state cases that require the defendant at the summary judgment stage to offer "specific, concrete evidence specific, concrete evidence that the area was actually inspected and the time it was actually last inspected prior to the fall." Opposition at 7.  In her view, this case should survive summary judgment because Target has not provided definitive evidence showing the last time it inspected the floor near where she fell. Thomason "is correct that on summary judgment in a slip-and-fall case, New York courts require

a defendant arguing lack of notice to present evidence that it neither created nor had notice of the dangerous condition." *Castellanos*, 2013 WL 4017166, at *7. But as discussed, "[i]n the summary judgment context, the New York state courts apply a different burden of proof in a slip-and-fall case than that imposed by the Federal Rules of Civil Procedure," *Vasquez v. United States*, No. 14 Civ. 1510 (DF), 2016 WL 315879, at *4 (S.D.N.Y. Jan. 15, 2016), so "New York's burden-shifting standard requiring defendant to provide proof of absence of notice does not apply in a federal diversity case," *Castellanos*, 2013 WL 4017166, at *7.

Target has therefore shown that there is no genuine dispute of material fact as to whether it had constructive notice that the green liquid was on the floor. Because there is no genuine dispute on a necessary element for Thomason's case, the Court grants Target's motion for summary judgment.[3]

## IV. Conclusion

Thomason had an unfortunate accident. But she provided no evidence that the liquid she slipped on had been on the floor long enough for Target's employees to discover it and clean it up. The Court therefore grants Target's motion for summary judgment. The Clerk of the Court is respectfully directed to close this case.

SO ORDERED.

Dated: April 18, 2022
New York, New York

_____
JOHN P. CRONAN
United States District Judge

---

[3] Because the Court grants summary judgment on this basis, it need not consider Target's argument that Thomason has not established the cause of the incident. *See* Motion at 11-15; Reply at 7-9.